[Civ. No. 22890. First Dist., Div. Two. Feb. 14, 1967.]

HANFORD E. ERB, Plaintiff and Appellant, v. DON FLOWER et al., Defendants and Respondents.

Elliott & Leighton and Arthur Brunwasser for Plaintiff and Appellant.

Joseph L. Bortin for Defendants and Respondents.

AGEE, J.—Plaintiff appeals from an adverse judgment in this action for damages for breach of contract.

Plaintiff is the assignee for collection of Hanford Industries, Inc., a California corporation, hereafter "Hanford." On September 14, 1962 an agreement was entered into whereby Hanford was to sell and deliver and defendants were to buy and accept an aggregate of not less than 75 small boats, called "Wee Craft," during the period of November 1962 through March 1963 and not less than 20 boats per month for the months of April 1963 through October 1964.

On October 1, 1962 the powers of Hanford were suspended by the Secretary of State for nonpayment of franchise taxes. (Rev. & Tax. Code, § 23302.)

No boats were ever ordered by defendants and no boats were manufactured for them. In latter January 1963, defendants informed Hanford that "We are washing our hands of the entire thing." Hanford then purportedly assigned its claim against defendants to its president, plaintiff herein, and this action was filed on February 5, 1963.

The corporate powers of Hanford were not revived until November 19, 1964. Thus, during the *entire performance period* of the contract the plaintiff's assignor was incapable of performing its obligations under the contract.

The trial court made the following finding: "[T]he Court expressly finds that plaintiff's assignor, during the entire effective period of the purported contract had been suspended as a California corporation, and repudiation of the purported contract was justified by defendants because of inability of plaintiff's assignor to perform thereunder up to the time of said repudiation; . . ."

Plaintiff calls attention to section 23304 of the Revenue and Taxation Code, which provides: "Every contract made in violation of this article [art. 7, "Suspension and Revivor"] is hereby declared to be voidable, at the instance of any party other than the taxpayer."

Plaintiff misses the point. We are not here concerned with the validity of the agreement. It was executed *before* Hanford was suspended and thus the suspension had nothing to do with its validity. However, Hanford became *incapable of performing* one month before the period of performance commenced and remained incapable throughout such period.

There is no evidence that any action of defendants caused the failure of Hanford to pay its taxes. This failure occurred

long before the execution of the agreement or the performance period under the agreement.

*Vogue Creamery Co.* v. *Acme Ice Cream Co.* (1935) 8 Cal. App.2d 357 [47 P.2d 757], is directly in point. There the two corporations entered into a written contract on May 1, 1924, whereby Acme agreed to purchase from Vogue the corporate assets of Vogue to be paid off in five years. Following the execution of the contract, Vogue was suspended for non-payment of the state license and franchise taxes. Nevertheless, on May 1, 1929, Vogue elected to treat the contract as repudiated by Acme and filed suit for damages for breach of contract.

On the trial Acme was granted a nonsuit ''on the sole ground that the plaintiff [Vogue] was in default in the payment of its license and franchise taxes and therefore unable to perform its obligations.''

The judgment entered on the nonsuit was affirmed on appeal, the court stating: ''Under the provisions of section 3669c of the Political Code, in effect at the time, the appellant was *incapable* of exercising any of its corporate rights or powers because of its failure to pay its state franchise and license taxes. It was therefore incapable of making a valid tender, a valid transfer of either real or personal property, or a valid delivery of its treasury stock as required by the contract. [Citation.] No burden was cast upon the Acme to keep appellant in good standing. The contract merely required the Acme to pay taxes and assessments levied against the 'properties hereby leased'. Hence appellant, by its own hand, put it beyond its power to perform its obligations under the contract. *When a vendor under an executory contract has rendered himself unable to perform he cannot complain of the vendee's repudiation, and cannot recover upon his offer of performance if he is not able and willing to perform according to the offer.*'' (Italics added; p. 359, citing Civ. Code, § 1495 and *Dickey* v. *Kuhn,* 106 Cal.App. 300 [289 P. 242].)

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.